# United States District Court
for the
Southern District of Indiana

Matthew Boggs,                              )
            *Plaintiff*,                     )
                                              )
      v.                                   )       Case No.
                                              )
Chase Holmes,                              )
Jason Myers,                               )
Travis Kempton,                            )
Fredrick McConnaughey,                     )
City of Shelbyville, and the               )
Shelby County Sheriff, f/k/a as the        )
Shelby County Sheriff's Department,        )
            *Defendants.*                     )

## **Complaint for Damages**

Plaintiff Matthew Boggs ("Matthew"), by counsel, files his Complaint for Damages, and in support hereof, states as follows:

### I.  Nature of the Case

1.  This case arises from an incident that occurred on May 17, 2022.  The Shelbyville SWAT team was called to assist serving an arrest warrant on Matthew, who officers were advised was unarmed inside of a detached garage in St. Paul, Indiana.  The SWAT team deployed tear gas inside the garage, at which time Matthew gave himself up by walking out of the garage with his hands in the air and dropping to his knees.  Despite Matthew posing no threat to the officers, Officer Jason Myers used a shield to knock Matthew down, face-first, onto the driveway.  Officer Travis Kempton punched Matthew in the face.  And Officer Chase Holmes tased Matt.  Officer Holmes then lied about Matthew's actions in a probable cause affidavit, which caused Matthew to be wrongfully charged and prosecuted for resisting law enforcement, and wrongfully incarcerated

for approximately 132 days.

## II.  Jurisdiction & Venue

2.      This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1983.

3.      This Court has jurisdiction over the parties because the parties are either domiciled in Indiana or are political subdivisions of the State of Indiana.

4.      Venue is proper in the Southern District of Indiana, Indianapolis Division, under 28 U.S.C. § 1391(b) because the events at issue occurred in the town of St. Paul, which is located on the border of Shelby County and Decatur County, Indiana.

## III.  Identification of Parties

5.      Matthew was at all relevant times a citizen of Shelby County, Indiana.

6.      Defendant City of Shelbyville was at all relevant times a political subdivision of the State of Indiana.

7.      The City of Shelbyville operates the Shelbyville Police Department.

8.      Defendant Shelby County Sheriff, formerly known as the Shelby County Sheriff's Department (the "Sheriff's Department"), is a local government entity.  Ind. Code § 36-2-13-5.

9.      Defendant Chase Holmes ("Officer Holmes") was at all relevant times a duly appointed police officer for the City of Shelbyville, and was acting under color of state law as employee of the Shelbyville Police Department.

10.     Defendant Jason Myers ("Officer Myers") was at all relevant times a duly appointed police officer for the Sheriff's Department, and was acting under color of state law as an employee of the Sheriff's Department.

2

11.     Defendant Travis Kempton ("Officer Kempton") was at all relevant times a duly appointed police officer for the City of Shelbyville, and was acting under color of state law as employee of the Shelbyville Police Department.

12.     Defendant Fredrick McConnaughey ("Officer McConnaughey") was at all relevant times a duly appointed police officer for the City of Shelbyville, and was acting under color of state law as employee of the Shelbyville Police Department.

## IV.  Facts

13.     In May 2022, Matthew was engaged to Jenna McGinnis ("Jenna").

14.     On May 17, 2022, Matthew drove his motorcycle to the house Jenna rented, which was located at 111 South Pierce Street in St. Paul, Indiana.

15.     Matthew had a warrant for his arrest related to a non-violent drug charge.

16.     Police officers had told one of Jenna's neighbors that if Matthew showed up at Jenna's house that the neighbor should call the police.

17.     On May 17, 2022, at 2:26 p.m. the neighbor called the police and said that Matthew had just pulled up on a black motorcycle.

18.     A Town Marhsall from the town of St. Paul arrived at Jenna's house.

19.     Officers from the Sheriff's Department also arrived at Jenna's house.

20.     When the officers arrived, Matthew was in the detached garage.

21.     Jenna advised the officers that Matthew was unarmed.

22.     The officers did not enter the garage or make contact with Matthew; instead, they shouted for Matthew to come out of the garage.

23.     Matthew did not exit the garage.

24.     When Matthew did not exit the garage, the officers requested additional assistance.

3

25.     Shelby County has a SWAT team that is comprised of eleven officers from the Shelbyville Police Department and two officers from the Sheriff's Department.

26.     When the officers on-scene requested additional assistance to serve the arrest warrant, the SWAT team was deployed to Jenna's house.

27.     Approximately ten or eleven members of the SWAT team responded to Jenna's house.

28.     Among other things, they brought assault rifles and an armored vehicle.

29.     The SWAT team used a loud speaker to instruct Matthew to exit the garage.

30.     Matthew did not exit the garage.

31.     Officers used a garage door opener Jenna had given them to open both overhead garage doors.

32.     Officers then deployed a tear gas grenade inside the garage.

33.     Shortly after the tear gas was deployed, Matthew walked out of the garage and onto the gravel driveway with his hands in the air.

34.     Matthew was wearing a tank-top shirt.

35.     Members of the SWAT team had assault rifles pointed at Matthew.

36.     Multiple members of the SWAT team yelled, "Police, Down!"

37.     Matthew complied.  He dropped down to his knees in the driveway and held his hands up in the air with his fingers outstretched, showing the officers that his hands were empty.

38.     Multiple members of the SWAT team, wearing riot gear, circled Matthew.

39.     Thus, in broad daylight, Matthew—who had a warrant for a non-violent offense— was stationary on his knees, with his hands open in the air, surrounded by multiple members of a SWAT team, with assault rifles pointed directly at him.

40.     Matthew posed no threat to the officers' safety.

41.     Rather than simply handcuffing Matthew, Officer Myers struck Matthew in the back with a large SWAT team shield, which was a use of force designed to knock Matthew down, face-first, onto the gravel driveway.

42.     As Matthew was falling to the ground, he unsuccessfully tried to use his hands to catch himself, which Officer Myers later testified is a natural reaction for someone who has been thrust face-first to the ground.

43.     Although Matthew was unarmed and reacted naturally by trying to break his face-first fall, the officers continued to use excessive force.

44.     Officer Kempton punched Matthew in the face.

45.     Officer Holmes tased Matthew.

46.     Matthew was then handcuffed and arrested.

47.     Officer McConnaughy was on the scene and observed the above-described events.

48.     Matthew suffered multiple injuries, including contusions, a black eye, and one of his teeth being knocked out.

49.     Following the incident, Officer Holmes lied about Matthew's actions in a probable cause affidavit.

50.     Specifically, Office Holmes included in his report and probable cause affidavit that Officer Holmes was advised that Matthew "was an extreme officer safety concern due to his criminal history"; that Matthew was given "clear verbal commands to go to the ground flat"; that Matthew "went to his knees instead of laying flat on the ground as being ordered"; that Matthew "began to forcibly resist officers by attempting to pull his arms away from being secured"; and that Matthew "did not put his hands behind his back and continued to resist[.]"

51. These statements were all lies.

52. Officer Holmes was not advised that Matthew "was an extreme officer safety concern due to his criminal history."

53. Matthew was not given clear verbal commands to go to the ground flat.

54. Matthew did not begin to forcibly resist officers by pulling his arms away from being secured.

55. Matthew did not refuse to put his hands behind his back or resist in any manner.

56. Officer Holmes recommended to the Shelby County prosecutor that Matthew be charged with resisting law enforcement.

57. Officer Holmes's recommendation was knowingly false.

58. As a result of Officer Holmes's knowingly false representations, criminal charges were brought against Matthew for resisting law enforcement.

59. Matthew hired an attorney to defend him against the criminal charges initiated as a result of Officer Holmes's lies.

60. While the criminal action was pending, Officer Holmes withheld exculpatory evidence from the prosecutor, namely that Matthew had not committed any crime.

61. Similarly, while the criminal action was pending, Officers Myers, McConnaughey, and Kempton withheld exculpatory evidence from the prosecutor, namely that Matthew had not committed any crime.

62. Officers Holmes, Myers, McConnaughey, and Kempton (collectively, "the Defendant Officers") also took steps to wrongfully further what they knew was a baseless prosecution.

63. The Defendant Officers conferred with the prosecutor assigned to the case to

prepare for a trial on the resisting law enforcement charges brought against Matthew.

64.     On September 23, 2022, a bench trial was conducted in Shelby Superior Court II under Cause NO. 73D02-2205-CM-000355.

65.     The Defendant Officers lied under oath in an attempt to have Matthew convicted for a crime he did not commit.

66.     Among other things, the Defendant Officers testified that Matthew did not follow their commands and that he resisted when Officer Kempton tried to handcuff Matthew.

67.     On September 26, 2022, Matthew was found not guilty of resisting law enforcement.

68.     As a result of the Defendant Officers' conduct, Matthew was wrongfully incarcerated for approximately 132 days while awaiting trial.

69.     The Defendant Officers were acting individually and under color of law at all relevant times.

## V.  Claims

### Count 1: 42 U.S.C. § 1983 Claim for Excessive Force

70.     Matthew incorporates the preceding paragraphs as though fully set forth below.

71.     Officers Myers, Holmes, and Kempton deprived Matthew of his rights, privileges, and immunities as secured by the laws and Constitution of the United States by illegally and unconstitutionally using unnecessary, unreasonable, and excessive force against him.

72.     As a direct and proximate result of the officers' actions, Matthew has suffered personal injury and damages.

73.     Matthew is entitled to attorney fees under 42 U.S.C. § 1988.

**Count 2: 42 U.S.C. § 1983 *Monell* Liability**

74.     Matthew incorporates the preceding paragraphs as though fully set forth below.

75.     The City of Shelbyville and the Sheriff's Department (collectively, the "Government Defendants") had an unconstitutional policy and custom of inadequately training their officers in respect of using appropriate force.

76.     Specifically, the Government Defendants trained their officers that a subject who is on his knees, even a compliant one, should be forcefully taken to the ground before being handcuffed.

77.     The Government Defendants further trained their officers to use a taser in situations that do not require the use of such force.

78.     The decisions underlying these aforementioned unconstitutional policies and customs were made with deliberate indifference.

79.     As a direct and proximate result of these aforementioned policies and customs, Matthew has suffered injury and damages.

80.     Matthew is entitled to attorney fees under 42 U.S.C. § 1988.

**Count 3: 42 U.S.C. § 1983 Claim for Making False or
Misleading Statements in Support of a Probable Cause Affidavit**

81.     Matthew incorporates the preceding paragraphs as though fully set forth below.

82.     As set forth above, Officer Holmes knowingly or recklessly made false, misleading, or incomplete statements in support of a probable cause affidavit.

83.     Officer Holmes knowingly, or with reckless disregard for the truth, made false, misleading, or incomplete statements in his probable cause affidavit in relation to Matthew's arrest for resisting law enforcement.

8

84.     As a direct and proximate result of Officer Holmes's acts, Matthew suffered injury and damages.

85.     Matthew is entitled to attorney fees under 42 U.S.C. § 1988.

### Count 4: 42 U.S.C. § 1983 Claim for Unreasonable Seizure

86.     Matthew incorporates the preceding paragraphs as though fully set forth below.

87.     Matthew was falsely imprisoned in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution.

88.     Officer Holmes's false probable cause affidavit caused Matthew to be held in custody for resisting law enforcement when there was no probable cause for the criminal charges.

89.     Officer Holmes's false probable cause affidavit caused Matthew to be imprisoned for approximately 132 days without justification.

90.     As a direct and proximate result of Officer Holmes's acts, Matthew suffered injury and damages.

91.     Matthew is entitled to attorney fees under 42 U.S.C. § 1988.

### Count 5: 42 U.S.C. § 1983 Claim for Malicious Prosecution

92.     Matthew incorporates the preceding paragraphs as though fully set forth below.

93.     Indiana law recognizes the tort of malicious prosecution.

94.     However, state actors enjoy immunity from claims of malicious prosecution.

95.     Therefore, Indiana does not provide a remedy against state actors for malicious prosecution.

96.     Consequently, Matthew may bring a claim for malicious prosecution under 42 U.S.C. § 1983.

97.    The Defendant Officers improperly instituted, caused to be instituted, maintained, or caused to be maintained, a criminal action and charges against Matthew.

98.    The Defendant Officers had no probable cause to institute, caused to be instituted, maintain, or caused to be maintained the criminal charges against Matthew.

99.    In doing so, the Defendant Officers acted with malice.

100.    The criminal action was terminated in Matthew's favor.

101.    As a direct and proximate result of the Defendant Officers' actions and inactions, Matthew suffered injury and damages.

102.    In respect of malice, malice can be inferred from the complete lack of probable cause for the Defendant Officers to arrest Matthew for resisting law enforcement.

103.    Malice can also be inferred from the fact the Defendant Officers withheld exculpatory evidence and lied under oath at Matthew's trial.

104.     The Defendant Officers deprived Matthew of his rights, privileges, and immunities as secured by the laws and Constitution of the United States.

105.    The Defendant Officers' conduct resulted in the deprivation of Matthew's right not to be deprived of his life, liberty, or property without due process of law.

106.    Matthew suffered damages, including reputational, emotional, and financial harm.

107.    Matthew suffered emotional distress.

108.    Matthew suffered lost wages and also suffered the financial harm of hiring an attorney for the criminal action.

109.    Matthew is entitled to attorney fees under 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully requests a judgment against Defendants in an amount that will fully and fairly compensate him for his damages, for punitive damages, for the cost of

this action, including attorney fees, and for all other relief just and appropriate in the premises.

## <u>Jury Demand</u>

Plaintiff demands that this matter be tried to a jury.

Respectfully submitted,

 /s/ Robert D. King, Jr.
Robert D. King, Jr. (#20963-49)
ROB KING & ASSOCIATES, TRIAL LAWYERS
22 E. Washington St., Suite 310
Indianapolis, IN 46204
Phone: (317) 916-0000
Fax: (317) 955-1844
Email: rking@robertkinglaw.com

11